**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN SACCHI, <br><br> Plaintiff, <br><br> v. <br><br> QUEST DIAGNOSTICS INCORPORATED, et al., <br><br> Defendants. | Civil Action No. 20-12804 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff John Sacchi's ("Plaintiff") Motion to Remand. (ECF No. 5.) Defendant Quest Diagnostics Incorporated ("Quest") opposed (ECF No. 15), and Plaintiff replied (ECF No. 18). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Plaintiff's Motion to Remand is granted.

**I.   BACKGROUND**

The instant matter concerns an October 21, 2019 notification wherein Quest informed Plaintiff "that he had a scheduled appointment for several critical lab tests (a tuberculosis test and glucose tolerance testing) at the Quest laboratory in" Red Bank, New Jersey. (Compl. ¶ 13, Ex. A to Notice of Removal, ECF No. 1-1.) According to Plaintiff, because he "was unaware whether one or more of his numerous treating prescribers in fact ordered the specified lab tests for him," he "commenced [a] multi-month and still ongoing effort" to obtain pertinent information from Quest. (*Id.* ¶ 14.) "Plaintiff also was concerned that the Quest system may have automatically

generated those two tests based on the results of the lab tests that had been processed during [a] September 2019 appointment." (*Id.*)

According to Plaintiff, he has made "multiple electronic, website-based, telephonic, and written" requests to Quest to determine the validity and source of these tests to no avail. (*Id.* ¶ 16.) Plaintiff alleges that, in response to his requests, Quest sent him a second notification letter similar to the October 21, 2019 letter. (*Id.*) Plaintiff also asserts Quest made false statements to the New Jersey Attorney General's Division of Criminal Justice in an "effort to manufacture a criminal case against Plaintiff." (*Id.*) Finally, Quest allegedly threatened to personally sanction Plaintiff if he continued to seek information related to the notification. (*Id.*) Plaintiff maintains that his requests and questions "would be definitively answered" if Quest provided him with the "Protected Health Information in his record set at Quest, which encompasses laboratory tests. . . and the respective medical prescriber(s) who ordered [them], and which Quest is required to do by," *inter alia*, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA" or the "HIPAA Privacy Rule"). (*Id.*)

As a result of Quest's refusal to provide this information, Plaintiff alleges that his medical treatment may be "critically deficient." (*Id.* ¶ 17.) Furthermore, Plaintiff contends that if the tests outlined in the October 21, 2019 notification are instead for another Quest patient, that patient is unaware of pertinent medical information. (*Id.* ¶ 18.) In fact, Plaintiff asserts that "Quest openly stated in an audiotaped October 29, 2019 telephone call that" such "Misdirected Notifications" are common. (*Id.* ¶ 20.) Plaintiff, accordingly, alleges that:

> [Quest] deliberately refuse[s] to repair its apparently malfunctioning lab test notification system and refuse[s] to change its company[-]wide policy that refuses to provide accurate information to Misdirected Notification[] recipients and non-recipients, which subjects Plaintiff and [others] . . . to new and recurring injuries as either (i) a recipient and/or (ii) non-recipient of future Misdirected Notifications[.]

2

(*Id.* ¶ 22.)

On May 12, 2020, Plaintiff filed a complaint in the New Jersey Superior Court, Law Division, Monmouth County ("Superior Court") on behalf of himself and a class of individuals who (1) received notifications for tests that had not actually been ordered; (2) received notifications for tests, but were denied further relevant information from Quest; and/or (3) failed to receive a notification from Quest for tests ordered by a licensed treating prescriber. (*Id.* ¶ 23.) The Complaint alleges the following causes of action: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2.2, *et seq.*, (*id.* ¶¶ 33–43); (2) violation of the HIPAA Privacy Rule, (*id.* ¶¶ 44–47); (3) negligence per se, (*id.* ¶¶ 48–52); (4) negligence, (*id.* ¶¶ 53–57); (5) breach of the implied covenant of good faith and fair dealing, (*id.* ¶¶ 58–62); and (6) breach of contract, (*id.* ¶¶ 63–71). On September 17, 2017, Quest removed the matter to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. (*See generally* Notice of Removal, ECF No. 1.)[1] Plaintiff argues that Quest's removal was untimely and improper, and now moves to remand the matter to the Superior Court. (*See generally* Pl.'s Moving Br., ECF No. 5-1.)

## II.   LEGAL STANDARD

A defendant in a state court civil action may remove the case to federal court if the federal court would have had original jurisdiction to hear the matter in the first instance. 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The removing defendant bears the burden of establishing that federal subject matter jurisdiction exists, removal was timely filed, and removal was proper. 28 U.S.C. §§ 1441, 1446, 1447; *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). After removal, a district court may remand the matter to state

---

[1] On September 2, 2020, Plaintiff filed an amended complaint in the Superior Court. (*See generally* Am. Compl., Ex. 1 to Notice of Removal, ECF No. 1-9.) Quest's Notice of Removal, however, addresses only Plaintiff's original Complaint. (Notice of Removal ¶¶ 4, 8–12; *see generally id.*)

3

court if the removal was procedurally defective or if subject matter jurisdiction is lacking. 28 U.S.C. § 1447(c). Removal statutes are strictly construed against removal, and all doubts are to be resolved in favor of remand. *Samuel-Bassett*, 357 F.3d at 396.

## III.  DISCUSSION

Plaintiff sets forth several arguments in favor of remand.[2] The Court, however, need not address Plaintiff's arguments and, instead, finds that Quest has failed to adequately establish federal question subject matter jurisdiction.[3]

"Subject[]matter jurisdiction refers to the courts' statutory or constitutional *power* to adjudicate the case." *N.L.R.B. v. New Vista Nursing & Rehab.*, 719 F.3d 203, 211 (3d Cir. 2013) (emphasis in original) (internal quotation marks and citation omitted). "The basic statutory grants of federal[]court subject[]matter jurisdiction are contained in 28 U.S.C. § 1331, which provides for '[f]ederal question' jurisdiction, and § 1332, which provides for '[d]iversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) (alterations in original). Both federal question and diversity of citizenship jurisdiction provide the Court with original jurisdiction over a civil action. 28 U.S.C. §§ 1331, 1332(a). A party invokes diversity of citizenship jurisdiction when he "presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000." *Arbaugh*, 546 U.S. at 501; *see also* 28 U.S.C. § 1332(a). Here, neither party invokes the Court's diversity jurisdiction. (*See generally* Compl.; Notice of Removal ¶¶ 1, 8, 13.) Moreover, the pleadings do not clearly establish the parties'

---

[2] (*See generally* Pl.'s Moving Br. 2–3, 5–8 (arguing that Quest (1) waived formal service of process and, therefore, its removal was untimely; (2) removed the action "to avoid its imminent discovery obligations" in state court; and (3) wrongfully forum shopped when it removed the matter to the District of New Jersey's Newark Vicinage).)

[3] Federal courts "have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and [may] decide the issue sua sponte . . . in removal cases." *Liberty Mut. Ins. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995).

4

citizenship and fail to allege any amount in controversy, let alone an amount that exceeds $75,000. (*See generally* Compl.)

Federal question jurisdiction, on the other hand, exists when the action arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The presence or absence of federal[]question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. Here, Defendant asserts the Court has federal question jurisdiction because Plaintiff's claims are all based on HIPAA, 42 U.S.C. § 1320d, *et seq.*, and the HIPAA Privacy Rule, 45 C.F.R. § 164.000, *et seq.*, a federal statute and regulation, respectively. (Notice of Removal ¶ 1; *see also id.* ¶¶ 8–13.) HIPAA, however, does not afford individuals a federal private right of action. *See Antonelli v. Gloucester Cnty. Hous. Auth.*, No. 19-16962, 2019 WL 5485449, at *8 (D.N.J. Oct. 25, 2019) (quoting *Vines v. Columbus House*, No. 13-3923, 2017 WL 2539409, at *12 n.11 (D.N.J. June 12, 2017)); *Hove v. Cleary*, No. 10-1876, 2011 WL 2223760, at *7 (D.N.J. June 6, 2011); *see also Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010). Nonetheless, this does not preclude a finding that federal question jurisdiction exists in the instant matter.

"[E]ven if the cause of action is based on state law, there is a 'special and small category of cases in which [federal question] jurisdiction still lies.'" *Goldman v. Citigroup Glob. Mkts., Inc.*, 834 F.3d 242, 249 (3d Cir. 2016) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). In that small category, federal jurisdiction applies to state law claims if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). Here, the Court finds the Eastern District of Pennsylvania's decision in *Baum v. Keystone Mercy Health Plan*, 826 F. Supp.

5

2d 718 (E.D. Pa. 2011), is instructive. In *Baum*, a "flash drive containing personal health information of [the plaintiff] and more than 280,000 other children insured by" the defendant health insurance provider went missing from the provider's corporate offices. *Id.* at 719. The plaintiff filed a complaint against the provider alleging: (1) violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, (2) negligence, and (3) negligence per se for "fail[ure] to adhere to Pennsylvania law and federal regulations issued pursuant to" HIPAA. *Id.* at 719–20. Upon the provider's removal to federal court, the court found that "this case does not fall into the exceptional category of cases described in *Grable*[.]" *Id.* at 721. In remanding the matter, the court held that although "the personal data at the heart of this case is protected by HIP[AA], this is a fairly straightforward state-law tort case." *Id.* Moreover, the court noted that if it were to permit the action to proceed in federal court, it "would federalize an entire category of state tort claims when Congress has not indicated any intent to do so." *Id.* "Such a finding would greatly disturb the balance between federal and state judicial responsibilities because almost any litigation within the medical industry would have the potential for the disclosure of information protected by HIP[AA]." *Id.* at 721–22 (internal quotation marks and citation omitted).

Here, aside from Plaintiff's HIPAA violation claim, the Complaint alleges state-law causes of action. (*See generally* Compl. ¶¶ 33–43, 48–71 (asserting claims for violation of the NJCFA, negligence per se, negligence, breach of the implied covenant of good faith and fair dealing, and breach of contract).) Although these claims relate to HIPAA and the protections it affords, that does not convert this matter into a federal cause of action. Moreover, despite having the burden of establishing subject matter jurisdiction, Quest does not assert in its Notice of Removal that the instant matter raises a substantial federal question. (*See* Notice of Removal ¶ 8 (asserting that the Court has federal question jurisdiction because Plaintiff "alleges violations of a federal law"); *see also id.* ¶¶ 8–12.) Finally, the Court echoes the *Baum* court's concerns of opening federal

6

jurisdiction to any state law cause of action relating to violations of HIPAA. The Court, therefore, finds that Quest has failed to establish that federal question jurisdiction exists over the instant matter. Accordingly, the Court grants Plaintiff's Motion to Remand to the Superior Court.[4]

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand is granted. The Court will enter an Order consistent with this Memorandum Opinion.

*M. Shipp*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[4] Quest also asserts that "[a]lthough the primary claims are all based on HIPAA and therefore raise a federal question, to the extent this Court determines a claim is not related to HIPAA, this Court nevertheless maintains supplemental jurisdiction over any non-related claims pursuant to 28 U.S.C. § 1367." (Notice of Removal ¶ 13.) Supplemental jurisdiction pursuant to § 1367, however, requires first that the district court have original jurisdiction over one of the claims. 28 U.S.C. § 1367(a); *see also, e.g.*, *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 283 n.11 (3d Cir. 2013) ("Given those federal anchor claims, the District Court had supplemental jurisdiction under 28 U.S.C. § 1367 over the state-law claims."). Having found that (1) HIPAA does not provide a federal private right of action and (2) the instant action does not raise a substantial federal question, supplemental jurisdiction pursuant to § 1367 does not apply.